DuPont's affirmative representations and/or omissions in forming their belief that the drinking

water was safe and effective for human consumption, in continuing to purchase and consume

such drinking water contaminated with C-8, and in not seeking treatment and/or ways to

remedy their past and continuing exposure to C-8, which reliance was justified because of

DuPont's superior knowledge regarding the Releases and C-8.

181.    Plaintiff-decedent, other exposed individuals, and the public at large were

damaged and physically harmed as a direct and proximate result of their justified reliance on

DuPont's affirmative, fraudulent representations and/or omissions and, as a direct and

proximate result of such justified reliance, Plaintiff-decedent continued to purchase and

consume drinking water contaminated with harmful levels of C-8 and suffered injury.

### THIRD COUNT

### STRICT LIABILITY AND DEFECTIVE PRODUCT, FAILURE TO WARN, AND CONSPIRACY

182.    Plaintiff incorporates herein by reference each and every paragraph of

this Complaint as though set forth in full in this cause of action.

183.    DuPont maliciously conspired with independent testing organizations,

agencies, laboratories, and/or water companies, including through unlawful, affirmative

misrepresentations and/or unlawful concealment of material facts regarding the

Releases, C-8 exposure, and the contaminated drinking water, to illegally and/or

wrongfully operate and/or manage the Plant and/or conduct other operations and

activities at the Plant in such a manner as to illegally and/or wrongfully cause, permit,

and/or allow the Releases, thereby contaminating the drinking water and blood/body of

Plaintiff-decedent, and also by knowingly making illegal and/or wrongful false

representations and/or knowingly concealing material information from Plaintiff-

40

decedent, other exposed individuals, and the public at large regarding the Releases, the contaminated drinking water, and Plaintiff-decedent's harmful exposure to C-8, and maliciously conspired to illegally and/or wrongfully avoid minimizing, abating, and/or treating the Releases, to illegally and/or wrongfully avoid properly notifying the public or government officials of the ongoing Releases, and to illegally and/or wrongfully avoid correcting, clarifying, rescinding, and/or qualifying their misrepresentations to Plaintiff-decedent, other exposed individuals, and the public at large that the Releases and DuPont's acts and/or omissions were not causing any physical harm and/or damage to them, or that the contaminated drinking water was safe to consume.

184.    The purpose of DuPont's and its co-conspirators' conspiracy was to hide DuPont's illegal and unlawful Releases, to unlawfully deceive consumers into purchasing the contaminated drinking water, and/or to promote and facilitate the placement of an illegally dangerous and defective product into the stream of commerce and/or to avoid lost profits and other economic harm to DuPont.

185.    DuPont's and its co-conspirators' affirmative misrepresentations regarding the safety of the contaminated drinking water were unlawful and violated West Virginia law, including but not limited to West Virginia's Consumer Credit and Protection Act.

186.    DuPont's and its co-conspirators' wrongful acts in furtherance of their conspiracy directly and proximately induced justified reliance by Plaintiff-decedent, which directly and proximately injured Plaintiff and Plaintiff-decedent and caused Plaintiff's damages.

187.    DuPont and its co-conspirators publicly and repeatedly vouched for, endorsed, and/or guaranteed the safety of the contaminated drinking water, including misrepresenting to

Plaintiff-decedent, other exposed individuals, and the general public following alleged testing and analysis of the water that the contaminated drinking water did not contain unhealthy levels of C-8 and that drinking the contaminated water would not cause injury or any risk of injury because of unhealthy levels of C-8.

188.    At the time DuPont and its co-conspirators made these misrepresentations, they knew that the contaminated drinking water contained unhealthy levels of C-8, and that drinking the contaminated drinking water would cause injury.

189.    Because DuPont and its co-conspirators made misrepresentations in order to facilitate the placement of the contaminated drinking water into the stream of commerce, where DuPont and its co-conspirators reasonably foresaw that Plaintiff-decedent, other exposed individuals, and the general public would ingest such contaminated drinking water and become injured due to the unhealthy levels of C-8, DuPont and its co-conspirators voluntarily assumed the duties and responsibilities of a supplier of the contaminated drinking water.

190.    The contaminated drinking water was defective in that, when it was placed in the stream of commerce, (1) the foreseeable risks exceeded the benefits associated with consumption; (2) the contaminated drinking water was more dangerous than the ordinary consumer, including Plaintiff-decedent, other exposed individuals, and the public at large would expect and more dangerous than other drinking water that was available and marketed in the area; (3) the contaminated drinking water was not distributed with sufficient warnings and instructions associated with its use; (4) the contaminated drinking water was inadequately and/or incorrectly tested; and (5) the contaminated drinking water was not reasonably safe for its intended use, in that at the time the contaminated drinking water was produced, sold and/or

distributed, it failed to meet the standards of a reasonably prudent manufacturer of the same or similar product.

191.    DuPont failed to warn Plaintiff-decedent, other exposed individuals, and the general public about the unhealthy levels of C-8 in the contaminated drinking water, which a reasonably prudent manufacturer or supplier would have disclosed or warned consumers about.

192.    The contaminated drinking water was defective because of the presence of unhealthy and/or unreasonably risky levels of the contaminant C-8 in it, which C-8 directly and proximately caused Plaintiff-decedent's injuries.

193.    Plaintiff-decedent's use of the contaminated drinking water was a foreseeable and intended use to DuPont.

194.    DuPont is strictly liable to Plaintiff for Plaintiff's damages.

## FOURTH COUNT

## UNFAIR AND DECEPTIVE PRACTICES (W. VA. CODE §§ 46A-6-101, 102)

195.    Plaintiff incorporates herein by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

196.    Between at least October 2000 and December 2012, DuPont published, disseminated and/or circulated written information through press releases, letters, editorials, statements, interviews, and other communications with the media and/or others directed toward the public, including Plaintiff-decedent, which written information constituted "advertisements" under West Virginia law and tended to and did induce, directly and indirectly, West Virginia residents, including Plaintiff-decedent, to enter into contracts and agreements to purchase and/or continue purchasing drinking water contaminated with C-8, and to in fact purchase such

drinking water when the published information was known and/or calculated by DuPont to mislead Plaintiff-decedent and other consumers in West Virginia.

197.    Because DuPont actively advertised the contaminated drinking water, DuPont was engaged in "trade" and/or "commerce" under West Virginia law.

198.    As a purchaser of the contaminated water, Plaintiff-decedent was a "consumer" under West Virginia law, and Plaintiff-decedent's purchase of the contaminated water was a "consumer transaction" under West Virginia law.

199.    DuPont, through the publication of incomplete and false information regarding the safety of the contaminated drinking water, engaged in unfair methods of competition and unfair or deceptive practices as set forth in West Virginia's Consumer Credit and Protection Act, including, but not limited to: advertising, printing, displaying, publishing, distributing or broadcasting, or causing to be advertised, printed, displayed, published, distributed or broadcast a statement, disclosure, or representation with regard to the sale of goods which was false, misleading, or deceptive, which included a material misrepresentation, and which omitted to state material information which was necessary to make the statements made therein not false, misleading or deceptive and also by engaging in conduct which created a likelihood of confusion of or misunderstanding and constituted unconscionable acts.

200.    DuPont also engaged in unfair methods of competition and unfair or deceptive practices by advertising the contaminated drinking water in such a manner as to: cause confusion and/or misunderstanding as to the source, sponsorship, approval or certification of the contaminated drinking water; cause confusion and/or misunderstanding as to the affiliation, connection, or association with or certification by another of the contaminated drinking water; using deceptive representations in connection with the contaminated drinking water;

representing that the contaminated drinking water had sponsorship, approval, characteristics, ingredients, uses, benefits and/or quantities that it did not have; representing that the contaminated drinking water was of a particular standard, quality, and/or grade when the contaminated drinking water was not of such standard, quality, and/or grade; advertising the contaminated drinking water as being safe to consume with the intent that the contaminated drinking water would be sold in its unsafe condition and not as advertised; engaging in conduct which created confusion and/or misunderstanding as to the contaminated drinking water; acting and using deception, fraud, false pretense, false promise/misrepresentation, and/or concealing, suppressing, and/or omitting material facts with the intent that Plaintiff-decedent, other exposed individuals, and the general public would rely upon such concealment, suppression, and/or omission in connection with the sale and advertisement of the contaminated drinking water.

201.     The acts and/or omissions described above violated W. Va. Code § 46A-6-101, *et seq.* in that DuPont withheld information about the deleterious effects of C-8 with the intent that Plaintiff-decedent, other exposed individuals, and the public at large would purchase and consume contaminated drinking water when DuPont knew if the truth were published or provided to Plaintiff-decedent, other exposed individuals, and the public at large that they would not purchase or consume the contaminated drinking water.

202.     DuPont's affirmative misrepresentations in its advertisements violated W. Va. Code § 46A-6-101, *et seq.* in that DuPont made such misrepresentations about the supposed safety of the contaminated drinking water with the intent that Plaintiff-decedent, other exposed individuals, and the public at large would purchase and consume the contaminated drinking water when DuPont knew if the truth were published or provided to Plaintiff-decedent, other exposed individuals, and the public at large that they would not purchase or

consume the contaminated drinking water.

203.     As a direct and proximate result of the violation by DuPont of W. Va.

Code § 46A-6-101, *et seq.* Plaintiff-decedent suffered an ascertainable loss, including

personal injury and death and is entitled to recover damages as provided by such statute.

204.     DuPont's unfair methods of competition and unfair and deceptive acts and

practices in the conduct of the trade and commerce of the contaminated drinking water

were "unlawful" under West Virginia law.

## FIFTH COUNT

### NEGLIGENCE *PER SE* AND *PRIMA FACIE* NEGLIGENCE

205.     Plaintiff incorporates herein by reference each and every paragraph of

this Complaint as though set forth in full in this cause of action.

206.     One or more West Virginia statutes, including but not limited to West

Virginia Code § 22-11-1 *et seq.* and West Virginia Code § 46A-6-101 *et seq.,* and one or more

federal statutes, including but not limited to 15 U.S.C. §§ 2607 and 2614, 33 U.S.C. §§

1311(a) and 1342, and 42 U.S.C. §§ 300i-1 and 6921-6939e, impose duties of care on DuPont

with regard to DuPont's actions and/or omissions towards Plaintiff-decedent.

207.     By its acts and/or omissions resulting in the Releases, DuPont violated and/or

continues to violate and/or breach one or more applicable West Virginia and/or federal

statutes and/or duties, including but not limited to West Virginia Code § 22-11-1 *et seq.,* West

Virginia Code § 46A-6-101 *et seq.*, 15 U.S.C. §§ 2607 and 2614, 33 U.S.C. §§ 1311(a) and

1342, and 42 U.S.C. §§ 300i-1 and 6921-6939e, constituting negligence *per se* and/or *prima

facie* negligence, including liability for all injuries to Plaintiff associated with the Releases.

208.     DuPont's violation of law and breach of its statutory duties directly and

proximately caused and/or continues to directly and proximately cause damage to Plaintiff and Plaintiff-decedent in the form of economic damage and bodily injury for which DuPont is liable.

## SIXTH COUNT

## PAST AND CONTINUING TRESPASS AND BATTERY

209.    Plaintiff incorporates herein by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

210.    DuPont has known for several decades that the Releases have been contaminating drinking water sources, including Plaintiff-decedent's drinking water source, with C-8, that the contaminated drinking water is ingested by consumers, including Plaintiff-decedent, that C-8 is harmful and toxic to humans and animals, and that once ingested, C-8 will remain in a person's blood and/or body for a long time, including through binding to blood and/or tissues.

211.    Despite such knowledge, DuPont continued, and continues, to cause Releases which contaminate drinking water sources, including Plaintiff-decedent's drinking water source, with C-8, and which cause harmful physical contact with Plaintiff-decedent, other exposed individuals, and the public at large.

212.    DuPont's continued actions with knowledge that such actions will result in harmful physical contact with Plaintiff-decedent, other exposed individuals, and the public at large demonstrate intent and/or reckless indifference by DuPont with regard to the Releases and the harm they have caused and will cause.

213.    DuPont's intentional acts and/or omissions resulting in the Releases have resulted and continue to result in the release and/or threatened release of C-8 onto and/or into the blood and/or body of Plaintiff-decedent or otherwise unlawful and harmful invasion,

contact, and/or presence of C-8 onto and/or into Plaintiff-decedent's blood and/or body, which interfered with Plaintiff-decedent's use and possession of Plaintiff-decedent's blood and/or body.

214.     The C-8 present in and/or on Plaintiff-decedent's blood and/or body originating from the Plant was at all relevant times hereto, and continues to be, the property of DuPont.

215.     The invasion and presence of the C-8 in and/or on Plaintiff-decedent's body and/or blood was and continues to be without permission or authority from Plaintiff-decedent or anyone who could grant such permission or authority.

216.     DuPont's intentional acts and/or omissions were done with the knowledge and/or belief that the invasion, contact, and/or presence of C-8 with, onto, and/or into Plaintiff-decedent's blood and/or body were substantially certain to result from those acts and/or omissions.

217.     Harmful contact with Plaintiff-decedent's blood and/or body was the direct and/or indirect result of DuPont's intentional acts and/or omissions.

218.     The presence and/or continuing presence of the C-8 in and/or on Plaintiff-decedent's blood and/or body is offensive, unreasonable, and/or harmful and constitutes a continuing trespass and battery.

219.     DuPont's past and/or continuing trespass and battery upon Plaintiff-decedent's blood and/or body proximately caused and/or continues to proximately cause damage to Plaintiff-decedent in the form of bodily injury and economic damage, for which DuPont is liable.

## SEVENTH COUNT

## NEGLIGENT, INTENTIONAL, AND RECKLESS INFLICTION OF EMOTIONAL DISTRESS AND OUTRAGE

220.     Plaintiff incorporates herein by reference each and every paragraph of this Complaint as though set forth in full in this cause of action

221.     DuPont's acts and/or omissions were negligent, intentional, and/or reckless, including DuPont's continued pollution of the environment and resultant exposure of Plaintiff-decedent, other exposed individuals, and the general public to harmful levels of C-8, despite knowing for decades that such exposure was causing and would continue to cause harm and/or unacceptable risk of harm to such individuals.

222.     DuPont knowingly and intentionally withheld and concealed material information from and /or affirmatively misrepresented to Plaintiff-decedent, other exposed individuals, and the general public that they were exposed to unacceptable levels of C-8 and/or that the Releases and C-8 were not causing or creating any risk of harm to them, despite knowing at the time these misrepresentations were made that the exposures, Releases and C-8 were causing and would continue to cause harm and or unacceptable risk of harm to such persons, including Plaintiff-decedent.

223.     DuPont was certain and/or substantially certain that its actions and/or omissions would cause emotional distress to Plaintiff-decedent, other exposed individuals, and the general public.

224.     DuPont's acts and/or omissions were outrageous, intolerable, and/or offended the generally accepted standards of decency and morality.

225.     By continuing to expose Plaintiff-decedent, other exposed individuals, and the general public to the Releases and unhealthy levels of C-8, and continuing to misrepresent to

such individuals that the Releases and C-8 exposure were not and would not cause them harm or risk of harm and/or continuing to withhold and/or conceal from Plaintiff-decedent material information on such issues, despite knowing that the Releases and C-8 exposure were causing and would continue to cause harm and/or risk of harm, DuPont acted in an outrageous and intolerable manner which offended any generally accepted standard of decency and morality.

226.    DuPont's acts and/or omissions resulting in the Releases directly and proximately caused physical harm, and continues to cause physical harm, to Plaintiff-decedent, the exposed individuals, and the general public.

227.    As a direct and proximate result of DuPont's outrageous and intolerable actions, Plaintiff has and will continue to suffer, severe emotional distress.

228.    DuPont's long-term, repeated, and immoral actions and/or omissions are strong evidence that Plaintiff-decedent's severe emotional distress was justified.

229.    No reasonable person could be expected to endure the knowledge that an entity has knowingly and intentionally exposed them to years of harmful contact with a dangerous chemical, and has furthermore actively misrepresented and/or concealed such danger from them, while reaping hundreds of millions of dollars in profits as a direct and proximate result.

## EIGHTH COUNT
## WRONGFUL DEATH

230.    Plaintiff incorporates herein by reference each and every paragraph of this Complaint as though set forth in full in this cause of action

231.    As a result of the foregoing, on August 4, 2017, Plaintiff-decedent Barry D. Lockhart died from kidney cancer and/or complications proximately related to Defendant's

acts and/or omissions.

232.    Plaintiff-decedent, Barry D. Lockhart, left statutory beneficiaries who, by reason of the Plaintiff-decedent's death, have suffered a pecuniary, emotional and other losses including but not limited to, sorrow, mental anguish, and solace which may include society, companionship, comfort, guidance, kindly offices and advise of the decedent; loss of income of the Plaintiff-decedent and services, protection, care and assistance provided by the Plaintiff-decedent, Barry D. Lockhart, and were all permanently damaged thereby.

233.    At all times herein mentioned, the actions of the named Defendant and its agents, servants and/or employees, were wanton, grossly negligent, reckless and demonstrated a complete disregard and reckless indifference to the safety and welfare of the general public and the Plaintiff-decedent in particular.

## NINTH COUNT

## PUNITIVE

## DAMAGES

234.    Plaintiff incorporates herein by reference each and every paragraph of this Complaint as though set forth in full in this cause of action.

235.    DuPont's acts and/or omissions as described above were conducted with such intentional, malicious, wanton, willful, grossly negligent, and/or reckless indifference to the rights of Plaintiff-decedent, other exposed individuals, and the public at large, that DuPont is liable for punitive damages.

**WHEREFORE**, Plaintiff hereby demands to be awarded damages and relief as follows:

A.      A judgment against DuPont that DuPont is liable to Plaintiff in an amount to be determined at trial;

B.      Compensatory damages in an amount exceeding the jurisdictional requirements

of this Court, to be more specifically determined at trial;

      C.      Compensatory damages to Plaintiff on behalf of Plaintiff-decedent's statutory beneficiaries for past damages suffered by Plaintiff-decedent, including but not limited to, pain and suffering for severe and permanent personal injuries (and health care costs) and other damages sustained by Plaintiff-decedent during his lifetime, together with interest and costs as provided by law;

      D.      Statutory damages as the court or jury may find to be fair and just as enumerated in West Virginia Code §55-7-6(b) and (c) including, but not limited to, damages for (A) sorrow, mental anguish, and solace which may include society, companionship, comfort, guidance, kindly offices and advice of the decedent, and (B) compensation for reasonably expected loss of (i) income of the decedent and (ii) services, protection, care and assistance provided by the decedent; (C) expenses for the care, treatment and hospitalization of the decedent incident to the injury resulting in death; and (D) reasonable funeral expenses;

      E.      Punitive damages in an amount to be determined at trial;

      F.      Damages as provided for pursuant to W. Va. Code § 46A-6-101 *et seq.*;

      G.      The costs and disbursements of this action, including attorneys' fees;

      H.      Pre judgment and post-judgment interest;

      I.      For all other further and general relief, whether compensatory, punitive, equitable or injunctive relief as this Court may deem just and appropriate.

## **JURY DEMAND**

Plaintiff hereby demands trial by jury on all issues so triable.

                          Jonavieve Lockhart,
                          Executrix of the Estate
                          Barry D. Lockhart,

Plaintiff By Counsel

/s/ R. Edison Hill
R. Edison Hill (WVSB No. 1734)
Harry G. Deitzler (WVSB No. 981)
**HILL, PETERSON, CARPER, BEE & DEITZLER, PLLC**
500 Tracy Way
Charleston, WV 25311
304-345-5667
304-345-1519 Facsimile
rehill@hpcbd.com
Hgdeizler@hpcbd.com


Larry A. Winter (WVSB No. 4094)
**WINTER & JOHNSON, PLLC**
3437 Teays Valley Road
Hurricane, WV  25526
304-982-9119
304-201-2667 Facsimile
lwinter@wjh-law.com